Affirmed and Memorandum Opinion filed October 7, 2008








 Affirmed
and Memorandum Opinion filed October 7, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00171-CR

____________

 

ANGEL SOLIZ, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the
248th District Court

Harris County, Texas

Trial Court Cause No.
1149948

 



 

M E M O R A N D U M   O P I N I O N

Appellant is charged with the manufacture or delivery of a
controlled substanceCcocaineCweighing at least
400 grams.  The trial court originally set bail at $5,000,000.  Appellant filed
an application for writ of habeas corpus requesting a reduction in bail to a
reasonable amount, which appellant stated in the application would be $20,000.
After conducting a hearing, the trial court reduced appellant=s bail to
$1,500,000.  Appellant filed this appeal.








Appellant claims the trial court abused its discretion in
setting the amount of bail at $1,500,000 and requests a reduction to an amount
no greater than $175,000.  The burden of proof is on the defendant to show bail
is excessive.  Ex parte Rodriguez, 595 S.W.2d 549, 550 (Tex. Crim. App.
1980).  In reviewing bond settings on appeal, we reverse a lower court's
determination only if we find an abuse of discretion.  Tex. Code  Crim. Proc. Ann. art. 17.15.  The amount of bail
required in any case is within the discretion of the court subject to the
following rules:

1.  The bail shall be sufficiently high to give reasonable assurance
that the undertaking will be complied with.

2.  The power to require bail is not to be so used as to make it an
instrument of oppression.

3.  The nature of the offense and the circumstances under which it was
committed are to be considered.

4.  The ability to make bail is to be regarded, and proof may be taken
upon this point.

5.  The future safety of a victim
of the alleged offense and the community shall be considered.

Id.    In
addition, we consider the accused=s work record,
family and community ties, length of residency, prior criminal record (if any),
and any alleged aggravating circumstances.  Ex parte Rubac, 611 S.W.2d
848, 849B50 (Tex. Crim.
App. 1981).  

Appellant did not testify at the hearing.  John Schwartz,
an agent with the Drug Enforcement Administration, testified as follows:

!       Appellant, appellant=s father Angel Soliz, Sr., and
other men were arrested after they tried to sell 29.678 kilograms of cocaine to
a confidential informant.

!       Appellant arrived at the home in which the
narcotics transaction was to occur in a Abrand new Dodge F250 super crew diesel truck@ worth  $53,000.  The papers in the
vehicle indicated that appellant recently had purchased this truck.








!       When the cocaine was presented to the
confidential informant, appellant=s father indicated to the informant that he could get 25
more kilograms of cocaine to sell to the informant, if the informant was
interested.

!       The current wholesale price for a kilogram of
cocaine in Houston is $16,000.  The price for a gram of cocaine on the streets
is $120.

!       The amount of cocaine involved in this case
indicates a more Ahigh-level drug trafficking . . .@

!       The cocaine
seized in this case, if sold in bulk quantities, would be worth approximately
$500,000; if sold by the gram, it would be worth more than $3,000,000.  

Rick Mendez, an employee of Access Bail Bonds Services,
testified as follows:

!       Appellant is employed at AMillenium Transportation Company@ where he buys and sells vehicles.

!       Mendez does not know what kind of work
appellant=s father will be doing if he is
able to post bond.

!       One individual is willing to pledge property
as collateral for appellant=s bond and 19 of appellant=s family members are willing to co-sign as guarantors of
appellant=s bond.  Based on this collateral,
these guarantors, and appellant=s long-standing ties to the Houston community, Mendez has determined
that a total bond of $175,000 can be posted for appellant and his father.

!       Though Mendez has spoken to relatives of
appellant and his father, he has not spoken with appellant or his father.

!       Mendez has
no idea what funds appellant and his father have available to them in bank
accounts.  Mendez has no idea what assets appellant and his father have.

       Nature
of the Offense and Circumstances Under Which it Was Committed








The indicted offense is the manufacture or delivery of a
controlled substanceCcocaineCweighing at least
400 grams.  The record reflects that appellant did not resist arrest and that
he was not armed when arrested.  Nonetheless, the charged offense is a serious
one, the alleged delivery of 29.678 kilograms of cocaine.   This offense is
punishable by imprisonment in the Institutional Division of the Texas
Department of Criminal Justice for life or for a term of years of not more than
99 years or less than 15 years and a fine not to exceed $250,000. Tex. Health & Safety Code Ann.
481.112(f) (Vernon 2003).  Cases involving offenses based on the illegal
manufacture, transportation and sale of large quantities of narcotics give rise
to special considerations and often justify high pre‑trial bonds.  Brown
v. State, 11 S.W.3d 501, 502 (Tex. App.CHouston [14th
Dist.] 2000, no pet.). Because narcotics‑related activities usually
require multiple transactions of a transitory nature, by the very nature of the
operation, participants in the transport and sale of illegal narcotics must be
highly mobile.  See id.   Moreover, the large amount of cash required to
effect these kinds of transactions suggests involvement of monied backers who
may consider the cost of bail as a normal business expense, which they may be
willing to forfeit and write off as one of the costs of operating this type of
business.  See id.  Thus, in cases involving large quantities of illegal
narcotics, a high bond may be required to assure the presence of the defendant
at trial.  See id.  Consequently, high pre‑trial bonds have been
upheld on numerous occasions for offenses involving possession of a large
quantity of a controlled substance.  See e.g., Ex parte Gunter, No.
05-04-00640-CR, 2004 WL 1632803, at *3 (Tex. App.CDallas July 22,
2004, no. pet.) (affirming $1,000,000 bond in case in which defendant was
charged with possession with intent to deliver 1.5 kilograms of
methamphetamine); Ex parte Pequeno-Flores, No. 01-03-00523-CR, 2003 WL
22682520, at *3 (Tex. App.CHouston [1st Dist.] Nov. 10, 2003, no.
pet.) (affirming $1,500,000 bond in case in which defendant was charged with
possession of at least 400 grams of cocaine in case in which the total quantity
of cocaine involved in the incident weighed more than 55 kilograms); Brown,
11 S.W.3d at 504 (affirming $500,000 bond where defendant charged with
possession with intent to distribute 4.5 kilograms of cocaine); Ex parte Reyes,
4 S.W.3d 353, 356 (Tex. App.CHouston [1st Dist.] 1999, no pet.)
(affirming $3,000,000 bond where defendant charged with possession with intent
to deliver 721 kilograms of cocaine); Maldonado v. State, 999 S.W.2d 91,
98 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d) (affirming
$2,500,000 bond where defendant charged with possession with intent to deliver
400 or more grams of cocaine).








                       Bail
Sufficient to Assure Appearance but not Oppress

The record contains evidence that a group of men including
appellant delivered to a confidential informant almost 30 kilograms of cocaine,
worth more than $3,000,000 if sold on the street in grams and worth
approximately $500,000 if sold in kilograms.  Evidence in the record also
demonstrates that appellant and his associates had access to another 25
kilograms of cocaine.  Shortly before his arrest, appellant purchased a vehicle
worth $53,000.  Appellant also apparently works at a company that buys and
sells vehicles.  The record does not reflect the amount of appellant=s income from this
employment.  In any event, the record reflects that, if found guilty, appellant
would face imprisonment for a significant period of time, up to and including a
life sentence.  There is evidence appellant was born in Houston, attended
public schools in Houston, and has lived in the Houston area his entire life. 
There is also evidence that appellant has many family members in the Houston
area.  Nonetheless, the evidence supports a finding that appellant is a
significant flight risk based on his alleged involvement in serious narcotics
trafficking, apparent access to assets having a total value of millions of
dollars, and the possibility that, if convicted, he might receive a life
sentence.  On this record, the trial court reasonably could conclude that bail
of $1,500,000 is not higher than necessary to give reasonable assurance of
compliance with the undertaking and that this bail is not oppressive.

                                                Ability
to Make Bail








The trial court reasonably could have concluded that
appellant did not prove that he is unable to make bail at $1,500,000.  Appellant
is employed.  The amount of cocaine involved in the charged offense is 29.678
kilograms, and the evidence indicates appellant  and his associates have access
to another 25 kilograms of cocaine.  The evidence indicates that the combined
value of this cocaine is approximately $875,000 if sold by the kilogram and
more than $6,500,000 if sold by the gram.  When arrested, appellant possessed
$1,255 in cash.  After he was arrested, police seized approximately 500 grams
of cocaine from the apartment appellant shared with his girlfriend.  Mendez did
not speak with appellant or have access to information showing his assets or
income.  Mendez based his bail projection on the collateral and guarantees that
people other than appellant allegedly agreed to provide.  There is no evidence
from the hearing that, considering appellant=s economic
resources, he is unable to post bail at $1,500,000.   

                                       Future
Safety of the Community

Appellant=s alleged involvement in serious narcotics
trafficking shows that, if free on bond pending trial, he might endanger the
future safety of the community, especially in light of his potential access to
an additional 25 kilograms of cocaine that was not seized when he was arrested
in this case.

                                                    Other
Factors

Mendez testified that appellant works at a company that
buys and sells vehicles, but there is no additional evidence regarding the
nature of that employment.  The record contains evidence showing appellant was
born in Houston, has lived in the Houston area his entire life, and has many
family members in the Houston area. 

                                             Conclusion








Based on these factors, we conclude that
the trial court did not abuse
its discretion in setting the amount of bail at $1,500,000 and in concluding
that appellant did not show that bail in this amount is excessive. 
Accordingly, we overrule appellant=s point of error and affirm the trial
court=s judgment.

 

 

/s/      Kem Thompson Frost

Justice

 

Judgment rendered and
Memorandum Opinion filed October 7, 2008.

Panel consists of
Justices Anderson, Frost, and Hudson.*

Do not publish - Tex. R. App. P. 47.2(b).









*  Senior Justice J. Harvey Hudson sitting by
assignment.